UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ronnie Cruz, | No. 1:24-cv-00169-JLT-GSA |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** |
| Commissioner of Social Security, | |
| Defendant. | |
| | **(Doc. 12, 16)** |

I.    **Introduction**

Plaintiff Ronnie Cruz seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1]

II.    **Factual and Procedural Background**

On March 17, 2021, Plaintiff applied for DIB alleging disability as of February 9, 2021 due to blindness/low vision, 3 toe amputations (right foot), high blood pressure and diabetes. AR 204. The Commissioner denied the claim initially and on reconsideration. AR 103–108; 110–116. The ALJ held a hearing on December 8, 2022. AR 23–42. The ALJ issued an unfavorable decision on January 25, 2023. AR 7–22. The Appeals Council denied review on December 4, 2023 (AR 1-6), and this appeal followed.

III.    **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 4, 9.

by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work

experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 9, 2021.  AR 13.  At step two the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; hypertension; peripheral neuropathy; bilateral proliferative diabetic retinopathy and bilateral diabetic macular edema; diabetic tractional retinal detachment involving the macula right eye; and vitreous hemorrhage of both eyes.  AR 13.  The ALJ found that Plaintiff had the non-severe impairment of malignant neoplasm of the colon.  AR 13.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> occasional climbing ramps/stairs, no climbing ladders, ropes or scaffolds; unlimited balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme heat and extreme cold, unprotected height and hazardous machinery; must avoid work environments requiring good bilateral vision for safety; and has only monocular vision and is therefore unable to perform work requiring depth perception

AR 14–18.

At step four the ALJ found that Plaintiff could perform his past relevant work as an advertising sale representative.  AR 18.  The ALJ therefore concluded that Plaintiff was not disabled since the alleged disability onset date of February 9, 2021.  AR 18.

### V.    Issues Presented

Plaintiff asserts two claims of error: **1-** The ALJ failed to properly evaluate Plaintiff's impairments at Step Three because he failed to evaluate evidence establishing that Plaintiff's impairment met Listing 2.02 "Loss of Central Visual Acuity"; and **2-** The ALJ failed to develop the record regarding Plaintiff's functional limitations despite acknowledging that Plaintiff's conditions medically worsened subsequent to the opinions of record.

1

2

3          **A.      Listing 2.02**

4          **1.      Legal Standard**

5          At step three, the ALJ is to determine whether the claimant's impairment or combination of

6  impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20

7  CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the

8  claimant's impairment or combination of impairments is of a severity to meet or medically equal

9  the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is

10  disabled. If it does not, the analysis proceeds to the next step.

11          The ALJ must evaluate the relevant evidence in concluding that an impairment does not

12  meet or equal a listing impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia*

13  *v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Boilerplate findings are generally insufficient to

14  support a conclusion that an impairment does not meet or equal a listing. *Id.* However, the ALJ

15  may meet this burden by adequately analyzing the evidence pertinent to the listing in other sections

16  of the ALJ's decision. *See Kruchek v. Barnhart*, 125 F. App'x 825, 827 (9th Cir. 2005) (finding

17  ALJ's discussion sufficient where the ALJ provided a boilerplate conclusion at step three but

18  adequately analyzed the pertinent evidence in the "Rationale" section of the decision).

19

20          **2.      Analysis**

21

22          There is no dispute that Plaintiff has lost essentially all vision in his right eye. *See* MSJ at

23  7, ECF No. 12 (citing AR 601, 713); Resp. at 1–5 , ECF No. 16 (not disputing the same).

24          Listing 2.02 (loss of central visual acuity) requires that the claimant's "Remaining vision in

25  the better eye <u>after best correction</u> is 20/200 or less." 20 C.F.R. Pt 404, Subpt. P, App. 1, § 2.02

26  (emphasis added).

27          Plaintiff emphasizes an ER treatment note dated November 29, 2022, which reflects 20/400

28

uncorrected in his left eye, "PHNI" (pinhole offered no improvement).  MSJ at 8 (citing AR 713).

Defendant, by contrast, relies on the June 15, 2021, consultative examination with Dr. Wagner—

and a July 29, 2022, exam to the same effect—indicating left eye visual acuity of 20/50 uncorrected,

and 20/40 with pinhole correction.  Resp. at 1 (citing AR 601, 655).

Defendant further emphasizes that the 20/400 figure from Plaintiff's ER visit was

uncorrected, whereas Listing 2.02 refers to best corrected visual acuity.  Resp. at 2, ECF No. 16.

This is not particularly responsive.    The ER visit reflected 20/400 "PHNI" (pinhole no

improvement), suggesting 20/400 was both best uncorrected acuity and best corrected acuity.  AR

713.  Defendant does not acknowledge the PHNI notation that followed 20/400.

Defendant further suggests that the ALJ discussed all pertinent exams in detail.  That is not

accurate.  The ALJ discussed the findings from the July 29, 2022, exam reflecting "visual acuity

right eye HM and left eye 20/50+1" (AR 655) and cited but did not describe the similar findings

from the June 2021 consultative exam (AR 601).  AR 16.  Most importantly, the ALJ's description

of the November 2022 ER visit–despite containing considerable detail—omitted any discussion of

the 20/400 "PHNI" finding:

> On November 29, 2022, the claimant was seen for emergency visit for PDR OS. He
> was given Avastin injection, which was tolerated well. He was diagnosed with PDR
> OU, DME OU, TRD involving the OD, epiretinal membrane OD, vitreous
> hemorrhage OU, diabetes type II with ocular complications, not insulin dependent;
> pseudophakia OD, and nuclear sclerosis OS (Ex. B15F:2-5).

AR 16.

Clearly there is a discrepancy between: 1- the June 2021/July 2022 exams reflecting best

corrected of 20/40 and 20/50+, respectively; and 2- the November 2022 ER visit reflecting 20/400

PHNI.

The ALJ's discussion was insufficient as the ALJ did not identify the 20/400 PHNI finding

or indicate what—in the ALJ's view—the recorded demonstrated concerning Plaintiff's best

5

corrected visual acuity for the purposes of Listing 2.02.

Further, the November 2022 ER visit discussed a recent onset (1 week) worsening of Plaintiff's vision, though it is not clear what —if anything—was identified as the cause of the worsening, or whether the 20/400 PHNI reading was expected to persist thereafter.

Remand is appropriate for the ALJ to obtain a medical opinion concerning the same, to affirmatively state what the ALJ concludes was Plaintiff's best corrected visual acuity during the relevant period, and to explain the evidentiary basis for that finding.

### B.    RFC; Development of the Record

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ has a duty to develop the record … even when the claimant is represented by counsel." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The duty is triggered where the evidence is ambiguous or inadequate for adjudication. *Id.* "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."). *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

#### 2.    Analysis

Plaintiff emphasizes that the ALJ did not credit any medical opinions because the records "suggest that the claimant is more limited than found by state agency medical consultants," and

that treatment notes subsequent to Dr. Wagner's opinion "clearly show worsening vision for which the claimant underwent injections." MSJ at 10 (AR. 17–18).

Plaintiff also emphasizes that "the ALJ also acknowledged new and worsening ulcers on Plaintiff's feet, suspicious for osteomyelitis, and that Plaintiff was advised to limit walking and standing, further showing Plaintiff is more than limited than found by Dr. Wagner." *Id.*

Plaintiff then explains that rather than developing the record with an updated medical opinion as to the extent of the worsening of Plaintiff's impairments and the functional limitations arising therefrom, the ALJ instead played doctor, interpreted raw medical data, substituted her opinion for that of medical professional, and reached her own interpretation of clinical findings. MSJ at 9–11. Plaintiff does not explain the applicability of the caselaw concerning interpretation of raw medical data. "Raw medical data" is not synonymous with "all medical records" or "all clinical findings." Simply put, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

The argument that the RFC was unsupported by the record is a distinct issue that Plaintiff also touches on, one which does not hinge on whether the ALJ had a "duty to develop the record," or whether counsel forfeited that argument at the hearing level—which was exhaustively addressed by both counsel.

The ALJ found the opinions of the state agency consultants—who found Plaintiff was capable of medium work—unpersuasive in part due to worsening of Plaintiff's vision. AR 17. Yet, the ALJ found that the only aspect of Plaintiff's vision that was limited was his depth perception due to monocular vision, but did not find Plaintiff was otherwise limited in his visual acuity. That finding is unsupported for the reasons discussed above and for the additional reasons the ALJ herself identified as the basis for rejecting the state agency opinions, namely <u>worsening</u> vision—

not just monocular vision which it appears was present at the time the state agency consultants rendered their opinions.  *See* AR 55, 72.

The ALJ also found the state agency opinions unpersuasive due to the development of foot ulcers on both feet.  Yet the ALJ found Plaintiff could stand and walk 6 of 8 hours—as required by light work—just as the state agency consultants found.  Thus, the ALJ's departure from the state agency consultant's opinions—light work opposed to medium—was not logically tethered to the <u>worsening</u> of Plaintiff's foot conditions given the only difference between light and medium exertional work is weight lifting capacity.

Further, the ALJ discounted the June 2021 consultative opinion of Dr. Wagner for similar reasons, namely that Plaintiff was more limited than suggested by Dr. Wagner.  However, as the ALJ acknowledged, Dr. Wagner explained that Plaintiff's ability to stand and walk 6 of 8 hours "may be modified somewhat <u>should his wound care doctors recommend lesser ambulation</u> due to the current wound on the right foot," AR 603.  As the ALJ elsewhere acknowledged, Plaintiff "was advised to limit standing and walking."  AR 17 (citing Ex. B14F).  It is not clear if this recommendation was from his wound care doctor(s) or related to the development of foot ulcers.  But the recommendation to limit standing and walking has potentially broader evidentiary significance than the "worsening" of Plaintiff impairments.  As such, it is thus in tension with the RFC for unlimited standing and walking.

Further, the ALJ cited the recommendation for Plaintiff to limit standing and walking as the final example of Plaintiff's "Nonadherence" to treatment recommendations.  AR 17.

> Nonadherence has been described. The record reflects that he never went to get right foot x-rays when recommended by podiatrist in April and May 2021 (Ex. B14F:2-7, 10). He was prescribed atorvastatin by urgent cared but he did not start it (Ex. B11F:7). He did not follow up for a blood pressure check when his hypertension was uncontrolled (Ex. B11F:7). He does have osteomyelitis of the toe on his left foot and was told to wear diabetic shoes, but he does not want to. He was advised to limit walking and standing (Ex. B14F:9, 11, 13, 15)

8

AR 17.  Importantly, the ALJ cited no evidence that Plaintiff was non-complaint with the recommendation to limit standing and walking, as such the recommendation is in tension with the RFC which does not limit standing and walking.

## VI.    Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Remand is warranted for the ALJ to: 1- obtain a medical opinion concerning Plaintiff's best corrected visual acuity for the purposes of Listing 2.02; and 2- to reconsider and explain the evidence of Plaintiff's visual and foot impairments, worsening of the same, and the impact thereof on his RFC.

## VII.    Recommendations

For the reasons stated above, the recommendation is that:

1.    Plaintiff's motion for summary judgment (Doc. 12) be **GRANTED.**

2.    Defendant's cross-motion (Doc. 16) be **DENIED.**

3.    The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.

4.    That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## VIII.    Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

1

2

3
IT IS SO ORDERED.

4
Dated:    **March 5, 2025**                      **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28